# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN RAGSDALE | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| UNIVERSITY OF PENNSYLVANIA | : | |
| HEALTH SYSTEMS | : | NO. 19-2797 |

## MEMORANDUM OPINION

Savage, J.                                                                                        April 13, 2020

Plaintiff Brian Ragsdale, a kidney transplant candidate, had requested his employer, defendant University of Pennsylvania Health Systems (Penn), grant him an exception to its no-cell phone policy to allow him to receive calls from a transplant program during work. Penn denied his request, but permitted him to receive such calls on landlines in his unit. Despite the denial and in violation of the no-cell phone policy, Ragsdale continued to use his cell phone. He was fired for admittedly using it for a call that was unrelated to the transplant program.

Ragsdale brought this action under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. He claims Penn discriminated against him due to his disabling kidney condition, failed to provide a reasonable accommodation and retaliated against him for requesting the exception to its cell phone policy to accommodate his disability. Penn has moved for summary judgment, contending the undisputed facts show that it did not discriminate or retaliate against Ragsdale or fail to provide him with a reasonable accommodation.

Because the undisputed facts show that Ragsdale was fired for using his cell phone in violation of Penn's policy after having been given a final warning and not for any discriminatory or retaliatory reason, we shall grant the motion for summary judgment.

**Background**

Ragsdale began working for Penn as a phlebotomist on March 12, 2007, in an inpatient unit.[1] In 2015, he was transferred to an outpatient unit at his request for "office type" duties to accommodate his hip surgery.[2] His duties included receiving patients in the waiting room, obtaining their personal and insurance information, ordering their bloodwork, drawing blood, and processing specimens.[3]

In January 2017, Ragsdale requested: (1) to work only in the outpatient unit to accommodate mobility issues; (2) to limit the number of booths in which he drew blood from patients, also due to mobility issues; (3) to take lunch no later than noon due to blood sugar concerns; and (4) to have his cell phone available during working hours to receive calls from a kidney transplant program.[4] Penn had already provided his first requested accommodation and agreed to provide the second and the third.[5] It is the fourth request which is at issue. Penn contends it provided the phone accommodation by making landlines available for receiving messages from his transplant program. Ragsdale argues it was not a reasonable accommodation because the landlines were not reliable.

---

[1] *See* Def.'s Stmt. of Undisputed Facts (DSUF) ¶¶ 1, 40-41 (ECF No. 15-2); Pl.'s Cntr.-Stmt. to DSUF (PCSDSUF) ¶¶ 1, 40-41 (ECF No. 16-1).

[2] DSUF ¶¶ 1, 38-41; PCSDSUF ¶¶ 1, 38-41.

[3] DSUF ¶¶ 11, 13; PCSDSUF ¶¶ 11, 13.

[4] DSUF ¶ 51; PCSDSUF ¶ 51.

[5] DSUF ¶¶ 56, 58; PCSDSUF ¶¶ 56, 58.

2

The supporting Physician Inquiry Form provided by Ragsdale's physician, Dr. Brezin, proposed "phone for calls about transplant availability" for one year.[6] Although Dr. Brezin did not use the words "cell phone," that is what he meant. He wrote: "Please allow him to carry his phone[.]"[7] However, Dr. Brezin specified that this accommodation was necessary "only for the purpose of receiving calls from the transplant program."[8]

Penn's policies prohibit personal cell phone use unless the employee is on break and outside the work area.[9] Penn refused to make an exception for Ragsdale.[10] Instead, Penn provided Ragsdale with two landlines in the outpatient unit for medical providers to call regarding transplant availability.[11] Ragsdale did not object or offer any alternatives to this accommodation.[12] He did not insist on using his cell phone.[13]

As a result of a verbal altercation with a coworker that disrupted the work area and disturbed patients, Ragsdale and the coworker were issued Final Warnings and placed on probationary status for a year.[14] They were advised that "any further performance

---

[6] Def.'s Memo. in Supp. of Mot. for Summ. J., Ex. B, P-10 at 2 (ECF No. 15-3).

[7] *Id.*

[8] *Id.*

[9] DSUF ¶ 27; PCSDSUF ¶ 27.

[10] *See* DSUF ¶ 58; PCSDSUF ¶ 58; *see also* Pl.'s Cntr.-Stmt. of Material and Disputed Facts at ¶¶ 17-19 (PCSMDF) (ECF No. 16-2).

[11] DSUF ¶ 58; PCSDSUF ¶ 58.

[12] DSUF ¶ 60; PCSDSUF ¶ 60.

[13] *See* DSUF ¶ 60; PCSDSUF ¶ 60.

[14] DSUF ¶¶ 67-70; PCSDSUF ¶¶ 67-70. Penn's policies permitted it to fire both participants. DSUF ¶ 72; PCSDSUF ¶ 72.

3

deficiency or violation, of any kind or magnitude, during the next twelve month period will result in immediate termination of employment."[15]

Although he was on Final Warning status and despite warnings from management, Ragsdale continued to use his personal cell phone during work in violation of Penn's policy.[16] The Phlebotomy Services Manager, Kara Eller, received "a lot" of complaints that Ragsdale was leaving his work area to talk on his cell phone.[17] She explained to him that he would be disciplined if improper cell phone use was witnessed by a member of management or multiple coworkers.[18] Although Eller had herself witnessed Ragsdale leaving his work area to talk on his cell phone "on numerous occasions," she did not discipline him.[19]

On June 20, 2018, by email, Eller reminded all employees that they were not permitted to use cell phones at work or to leave their work areas for personal calls.[20] She emailed her supervisor to alert him to Ragsdale's cell phone usage and to advise him that two other employees who used their cell phones would receive "performance management."[21] On June 22, 2018, Eller emailed Ragsdale reminding him that he had

---

[15] DSUF ¶ 73 (quotation omitted); PCSDSUF ¶ 73.

[16] DSUF ¶ 79; PCSDSUF ¶ 79.

[17] DSUF ¶ 80; PCSDSUF ¶ 80.

[18] DSUF ¶¶ 81, 83; PCSDSUF ¶¶ 81, 83.

[19] DSUF ¶ 80; PCSDSUF ¶ 80.

[20] DSUF ¶ 84; PCSDSUF ¶ 84.

[21] DSUF ¶¶ 85-86; PCSDSUF ¶¶ 85-86. "Performance management" refers to Penn's "progressive steps for performance improvement." Def.'s Memo. in Supp. of Mot. for Summ. J., Ex. B, P-7 at 5-8. These steps include Coaching, First Written Warning, Second Written Warning and Final Written Warning. *Id.* A single use of a personal cell phone while on duty typically subjects the employee to Coaching, "an ongoing, informal process through which the manager articulates models and reinforces expected performance . . . ." *Id.* at 5-6.

been provided the accommodation of landlines and he must stop using his cell phone at work and leaving the laboratory to take calls.[22]

On July 20, 2018, the department lead observed Ragsdale on his cell phone during work.[23] When confronted, Ragsdale admitted that he was not on the phone with a healthcare provider.[24] Because he violated Penn's no cell phone policy while on Final Warning, Penn terminated his employment on July 25, 2018.[25] During the termination meeting, Ragsdale did not dispute that he was using his cell phone in violation of Penn's policies, but instead requested a "second chance."[26] Penn declined.[27] Ragsdale requested a review of his termination the next day.[28] He later withdrew this request and did not otherwise challenge his termination.[29]

## Standard of Review

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of

---

[22] DSUF ¶ 98; PCSDSUF ¶ 98.

[23] DSUF ¶ 88; PCSDSUF ¶ 88.

[24] DSUF ¶ 90; PCSDSUF ¶ 90. Ragsdale was on the phone with Penn's Disability Management department regarding Family Medical Leave Act (FMLA) paperwork. Brian Ragsdale Tr. at 111:4-8 (ECF No. 15-3).

[25] DSUF ¶ 91; PCSDSUF ¶ 91.

[26] DSUF ¶ 92; PCSDSUF ¶ 92.

[27] DSUF ¶ 93; PCSDSUF ¶ 93.

[28] DSUF ¶ 95; PCSDSUF ¶ 95.

[29] DSUF ¶ 95; PCSDSUF ¶ 95.

proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In examining the motion, we must draw all reasonable inferences in the nonmovant's favor. *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159-60 (3d Cir. 2003).

The initial burden of demonstrating that there are no genuine issues of material fact falls on the moving party. FED. R. CIV. P. 56(a). Once the moving party has met its burden, the nonmoving party must counter with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmovant must show more than the "mere existence of a scintilla of evidence" for elements on which it bears the burden of production. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Bare assertions, conclusory allegations or suspicions are not sufficient to defeat summary judgment. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

**Analysis**

Ragsdale asserts three violations of the ADA in a single count: discrimination, failure to accommodate and retaliation.[30] He contends that his employment was terminated because of his disability and for requesting to use his cell phone at work to accommodate his disability.[31] He claims that Penn refused his reasonable request for accommodation.[32] Penn contends that providing landlines for Ragsdale to take calls

---

[30] Compl. ¶¶ 23-29 (ECF No. 1).

[31] *Id.* ¶ 28.

[32] *Id.* ¶¶ 26-27.

relating to the donor program was a reasonable accommodation.[33] Penn counters that it terminated Ragsdale's employment for the legitimate, non-discriminatory reason that he used his cell phone during work for calls unrelated to his participation in the donor program.[34]

*Failure to Accommodate*

To make out a claim for failure to accommodate a disability, the plaintiff must produce evidence that: "(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated." *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 157 (3d Cir. 2017) (quoting *Armstrong v. Burdette Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006)) (additional citations omitted). Penn does not deny that it knew Ragsdale was disabled and that he requested an accommodation. However, it contends it acted in good faith and provided a reasonable accommodation.

Ragsdale's purported evidence of Penn's lack of good faith is that the individuals who denied his cell phone use, Eller and Human Resources Specialist Lidia Corso, did not discuss the requested accommodation directly with him.[35] This means, according to Ragsdale, that Penn "lacked the precise rationale behind his request for accommodations."[36] The record does not support this conclusion.

---

[33] Def.'s Memo. in Supp. of Mot. for Summ. J. at 5-10 (ECF No. 15-1).

[34] *Id.* at 10-13, 18-21.

[35] Pl.'s Memo. in Opp. to Def.'s Mot. for Summ. J. at 7-8.

[36] *Id.*

The Employee Request for Reasonable Accommodation Form specifically asked: "How will the requested accommodation(s) enable you to perform the job functions you are currently unable to perform?"[37] Ragsdale responded: "To have access to my phone, I won't miss any important calls regarding my health or an organ transplant."[38] The Physician Inquiry Form asked Ragsdale's physician to "[p]lease explain how the employee's disability impacts his/her ability to perform any of his/her job functions."[39] Dr. Brezin explained: "Please allow him to carry his phone – only for the purpose of receiving calls from the transplant program."[40]

Penn's solicitation of the basis and nature of the requested accommodation from Ragsdale and his physician fulfilled its obligations under the ADA. ADA regulations and EEOC interpretive guidance provide that "the employer must make a reasonable effort to determine the appropriate accommodation." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 311 (3d Cir. 1999) (quoting 29 C.F.R. Pt. 1630, App. § 1630.9 at 359). Both parties must engage in "a flexible, interactive process" that "identif[ies] the precise limitations resulting from the disability and the potential reasonable accommodations that could overcome those limitations." *Id.* (quoting 29 C.F.R. § 1630.2(o)(3) & Pt. 1630, App. § 1630.9 at 359). An employer can show its good faith "in a number of ways," including, as Penn did here, requesting information about the disability and the limitations it places on the employee, asking the employee what accommodation he wants, considering his

---

[37] Def.'s Memo. in Supp. of Mot. for Summ. J., Ex. B, P-9 at 1.

[38] *Id.*

[39] Def.'s Memo. in Supp. of Mot. for Summ. J., Ex. B, P-10 at 2.

[40] *Id.*

8

request, and offering alternative accommodations. *Id.* at 317. The interactive process does not require a face-to-face meeting. *See id.* at 315-20. Nor does it "dictate that any particular concession must be made by the employer." *Id.* at 317.

There was no ambiguity about why Ragsdale was requesting cell phone use. He was a potential kidney transplant recipient and needed to be able to receive notice of a possible donation. Penn knew these facts.

Having considered the basis for Ragsdale's request and his physician's advice, Penn sought to accommodate the need for telephone access by providing landlines.[41] Ragsdale argues that the landlines later proved unreliable because he did not receive messages timely.[42] His argument fails. There was never a call from the transplant program to the landlines.[43] The only calls that were not delivered on the landlines were from his wife.[44] More importantly, he produced no evidence that he informed Penn that the landlines were not an acceptable accommodation because they were unreliable. Nor did he proffer any evidence that they were unreliable.

Given these undisputed facts, Ragsdale has not shown that Penn failed to provide a reasonable accommodation. On the contrary, the uncontroverted evidence establishes that it did provide a reasonable accommodation.

---

[41] DSUF ¶ 58; PCSDSUF ¶ 58.

[42] Pl.'s Memo. in Opp. to Def.'s Mot. for Summ. J. at 10 (ECF No. 16).

[43] DSUF ¶¶ 48-50, 104; PCSDSUF ¶¶ 48-50, 104.

[44] PCSMDF ¶¶ 23-24.

*Discrimination*

To establish a claim for discrimination under the ADA, the plaintiff must show that he: (1) is "disabled" within the meaning of the ADA; (2) is otherwise qualified to perform, with or without reasonable accommodations, the essential functions of his job; and (3) has suffered an adverse employment decision as a result of the discrimination. *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 186 (3d Cir. 2009) (citation omitted). Penn does not deny that Ragsdale is disabled and qualified to perform his job. It argues that he has failed to produce evidence that his termination occurred due to discrimination.[45]

Ragsdale argues his termination was "inexplicably intertwined with his request for accommodations" because his request to use his cell phone at work was denied and he was terminated for accessing it at work.[46] He is not correct. He requested an accommodation because he was on "an active organ transplant list."[47] His physician confirmed that he needed access to his phone "only for the purpose of receiving calls from the transplant program."[48]

Ragsdale was not fired because he used his cell phone for communicating about a kidney transplant. He was fired because he used his cell phone for a personal call unrelated to the transplant program.[49] Had his request been granted, he still would have violated Penn's policy. Thus, even if Penn had allowed him to have his cell phone for the

---

[45] Def.'s Memo. in Supp. of Mot. for Summ. J. at 11-12.

[46] Pl.'s Memo. in Opp. to Def.'s Mot. for Summ. J. at 3-4.

[47] Def.'s Memo. in Supp. of Mot. for Summ. J., Ex. B, P-9 at 1.

[48] Def.'s Memo. in Supp. of Mot. for Summ. J., Ex. B, P-10 at 2.

[49] Brian Ragsdale Tr. at 111:4-8.

limited purpose of receiving calls from the transplant program, he would have exceeded the scope of that permission when he used it for an unrelated purpose.[50]

*Retaliation*

To establish a claim for retaliation under the ADA, the plaintiff must show that: (1) he engaged in protected activity; (2) he suffered an adverse employment action after or contemporaneous with the protected activity; and (3) there was a causal connection between the protected activity and the adverse action. *Fogleman v. Mercy Hosp. Inc.*, 283 F.3d 561, 567-68 (3d Cir. 2002) (citation omitted). There is no dispute that requesting an accommodation is a protected activity and that termination is an adverse employment action. *See Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001). The dispute here is whether there is a causal connection between Ragsdale's request and his termination.

A plaintiff may establish a causal connection through the "unusually suggestive temporal proximity" of the adverse action to the protected activity, "a pattern of antagonism coupled with timing" or other facts supporting an inference of causation. *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). It is not clear upon which theory Ragsdale relies. Penn argues at length in its memorandum that Ragsdale has failed to present evidence of retaliation. He does not respond to Penn's argument.[51] He simply does not address retaliation.[52]

---

[50] In fact, neither of the two calls that Ragsdale received regarding transplant availability, in 2013 and 2017, were during working hours. DSUF ¶¶ 48-50, 104; PCSDSUF ¶¶ 48-50, 104.

[51] Def.'s Memo. in Supp. of Mot. for Summ. J. at 13-18.

[52] *See generally* Pl.'s Memo. in Opp. to Def.'s Mot. for Summ. J.

Eighteen months passed after Ragsdale requested to use his cell phone at work before he was terminated.[53]  Although "there is no bright line rule," the Third Circuit has held that far shorter periods do not support an inference of causation.  *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) (three months between protected activity and adverse action).  *See also Williams v. Phila. Housing Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (two months between protected activity and adverse action), *superseded by statute on other grounds*, ADA Amendments Act of 2008, Pub. L. No. 110-325, § 6, 122 Stat. 3553, 3558 (2008), as recognized in *Robinson v. First State Cmty. Action Agency*, 920 F.3d 182, 185 (3d Cir. 2019).  Thus, this lengthy passage of time militates against a finding of a causal link.

Ragsdale was not subjected to a pattern of antagonism between his request for an accommodation and his termination.  On the contrary, Penn repeatedly administered lesser or no discipline when he engaged in misconduct.  Penn's policies permitted it to terminate Ragsdale's employment for his participation in the October 2017 verbal altercation with a coworker, but it instead issued him a warning.[54]  Eller repeatedly overlooked Ragsdale's use of his cell phone at work until he defied her after she had emailed him on June 22, 2018, to stop.[55]  Significantly, Ragsdale received no greater discipline than coworkers who engaged in similar misconduct.[56]

---

[53] DSUF ¶¶ 51, 91; PCSDSUF ¶¶ 51, 91.  Even if Ragsdale has not abandoned his retaliation claim, he cannot prove one.

[54] DSUF ¶¶ 67-70, 72; PCSDSUF ¶¶ 67-70, 72.

[55] DSUF ¶¶ 80, 87; PCSDSUF ¶¶ 80, 87.

[56] DSUF ¶¶ 68, 86; PCSDSUF ¶¶ 68, 86.

12

Ragsdale has offered no evidence Penn terminated his employment because of his request for an accommodation.  The undisputed facts demonstrate that Penn terminated his employment because he persisted in using his cell phone at work in violation of company policy and after repeated warnings to stop doing so.[57]  Thus, because Ragsdale cannot show causation, he cannot prove a retaliation claim.

**Conclusion**

Because the undisputed facts demonstrate that Penn did not discriminate against Ragsdale due to his disability, fail to provide a reasonable accommodation or retaliate against him for requesting one, it is entitled to judgment as a matter of law.  Thus, we shall grant Penn's motion for summary judgment.

---

[57] Moreover, as noted, none of these calls were from the transplant program.  DSUF ¶¶ 48-50, 104; PCSDSUF ¶¶ 48-50, 104.